**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

No. 21-1812

───────────────

CHARLES W. BELLON; ROBERT E. EAKIN; JUDY GAY BURKE; LOUISE
NICHOLS; WILTON G. WALLACE; BERNADOT F. VEILLON; BARBARA
BROWN; ROBERT E. WILLIAMS, on behalf of themselves and others similarly
situated,

Plaintiffs – Appellants,

v.

THE PPG EMPLOYEE LIFE AND OTHER BENEFITS PLAN; PPG
INDUSTRIES, INC.; THE PPG PLAN ADMINISTRATOR,

Defendants – Appellees.

───────────────

Appeal from the United States District Court for the Northern District of West Virginia, at
Wheeling.  Gina M. Groh, District Judge.  (5:18-cv-00114-GMG-RWT)

───────────────

Argued:  March 8, 2022                                    Decided:  July 15, 2022

───────────────

Before KING, WYNN, and RUSHING, Circuit Judges.

───────────────

Affirmed in part, vacated in part, and remanded by published opinion.  Judge King wrote
the opinion, in which Judge Wynn joined.  Judge Rushing wrote a separate opinion
concurring in part and dissenting in part.

───────────────

**ARGUED:** Maureen Davidson-Welling, STEMBER COHN & DAVIDSON-WELLING,
LLC, Pittsburgh, Pennsylvania, for Appellants.  Joseph J. Torres, JENNER & BLOCK
LLP, Chicago, Illinois, for Appellees.  **ON BRIEF:** John Stember, STEMBER COHN &
DAVIDSON-WELLING, LLC, Pittsburgh, Pennsylvania; James T. Carney, Pittsburgh,
Pennsylvania, for Appellants.  Ashley M. Schumacher, Clifford W. Berlow, Alexis E.
Bates, Hope H. Tone-O'Keefe, JENNER & BLOCK LLP, Chicago, Illinois, for Appellees.

───────────────

KING, Circuit Judge:

This putative class action was initiated in the Northern District of West Virginia in July 2018 by eight plaintiffs — each a retiree of PPG Industries, Inc. ("PPG"), or the surviving spouse of such a retiree — following the termination of the plaintiffs' retiree life insurance coverage under the PPG Employee Life and Other Benefits Plan (the "Benefits Plan" or the "Plan").[1]  The operative complaint of January 2020 spells out multiple claims against the Benefits Plan, PPG, and the PPG Plan Administrator (collectively, the "PPG defendants").  *See Bellon v. PPG Emp. Life & Other Benefits Plan*, No. 5:18-cv-00114 (N.D. W. Va. Jan. 10, 2020), ECF No. 69 (the "Complaint").  By a Memorandum Opinion and Order of June 2021, the district court awarded summary judgment to the PPG defendants on all claims, without ruling on the class certification issue.  *See Bellon v. PPG Emp. Life & Other Benefits Plan*, No. 5:18-cv-00114 (N.D. W. Va. June 28, 2021), ECF No. 227 (the "Opinion").

On appeal, the plaintiffs contest the summary judgment award as to three counts of the Complaint, that is, Counts I, VII, and VIII.  As explained herein, we identify a genuine dispute of material fact with respect to the Count I claim that retiree life insurance coverage was "vested" in eligible employees working for PPG during the 15-year period from 1969 to 1984 (the "vesting claim").  Accordingly, we vacate the judgment as to the vesting claim and remand for consideration of whether the termination of the plaintiffs' retiree life

---

[1] To be clear, we utilize the phrase "the plaintiffs' retiree life insurance coverage" to refer to the insurance coverage that was provided to the retiree-plaintiffs and to the deceased spouses of the widow-plaintiffs.

insurance coverage contravened the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. We otherwise affirm.

I.

A.

1.

The plaintiffs initiated this multimillion-dollar civil litigation in 2018, representing a putative class of approximately 1,000 retired PPG employees and surviving spouses.[2] By way thereof, they primarily seek to "restore and recover contractually-vested retiree life insurance coverage and associated benefits" from the PPG defendants. *See* Complaint 1. Named as plaintiffs are six retirees who worked in PPG's commodity chemicals business between 1969 and 1984, and two widows of such PPG retirees. Each plaintiff was a participant in the Benefits Plan or a retiree life insurance beneficiary.[3]

The Benefits Plan historically offered two alternative retiree life insurance options to the participants. First, a Plan participant could elect a single lump-sum payment, which amounted to one-half of the participant's annual salary before retirement, with a maximum

---

[2] Our recitation of the relevant facts is drawn from the record and spelled out in the light most favorable to the plaintiffs, as mandated by precedent and Federal Rule of Civil Procedure 56. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276 (4th Cir. 2015) (en banc) (explaining that, in reviewing a summary judgment award, the facts are viewed "in the light most favorable to the nonmoving party").

[3] Plaintiffs Charles W. Bellon, Robert E. Eakin, Judy Gay Burke, Louise Nichols, Wilton G. Wallace, and Robert E. Williams are each retired PPG employees. Plaintiffs Bernadot F. Veillon and Barbara Brown are widows of PPG retirees.

benefit of $50,000. Second, certain Plan participants could alternatively elect a "surviving spouse benefit" consisting of half of the lump-sum payment plus a monthly payment to the surviving spouse for life, predicated on the amount of the deceased participant's pension. Life insurance coverage was provided to all of PPG's former salaried, nonunion employees who retired from PPG with 15 or more years of service and received a PPG pension at the time of retirement.

In January 2013, PPG merged its commodity chemicals business with an entity called Georgia Gulf Corporation to form a new business named Axiall. By the 2013 merger, PPG transferred to Axiall its obligations under the Benefits Plan to provide retiree life insurance coverage to eligible former employees of PPG's commodity chemicals business. In December 2015, however, Axiall terminated the retiree life insurance coverage of the plaintiffs and members of the putative class.

Of importance here, the theory of the Count I vesting claim is that, when PPG transferred its obligations under the Benefits Plan to Axiall in 2013, the plaintiffs (or their spouses) possessed "already earned and vested rights to retiree life insurance coverage under the PPG Plan" that could not be lawfully terminated. *See* Complaint ¶ 63. According to the plaintiffs, because their retiree life insurance coverage was vested under the Plan, the PPG defendants are obliged under ERISA to supply such coverage, regardless of whether Axiall provides coverage under a new benefits plan. Pursuant to the vesting claim, the plaintiffs seek for themselves and the putative class "to recover benefits due . . . under the terms of [the] plan, to enforce . . . rights under the terms of the plan, or to clarify . . .

rights to future benefits under the terms of the plan." *Id.* ¶ 64 (quoting 29 U.S.C. § 1132(a)(1)(B)).[4]

2.

The earliest date of any Benefits Plan document produced in the regular discovery proceedings by the PPG defendants was the 1981 summary plan description, which specified that when participants retired from PPG and satisfied the eligibility requirements prescribed by the Plan, "the amount of [their] retiree life insurance is continued at no cost." *See* J.A. 1057.[5] Notably, the 1981 summary description failed to reserve any right on the part of PPG to modify, amend, or change retiree life insurance coverage. On the other hand, the 1981 summary description provided that PPG explicitly reserved a right to modify, amend, or change other employee benefits provided by its Plan. For example, the 1981 summary description included a reservation of rights clause pertaining to a "Tax

---

[4] In addition to the vesting claim, Count I alleges that — regardless of whether the plaintiffs had a vested right to retiree life insurance coverage under the Benefits Plan — PPG contravened ERISA by transferring its obligation for that coverage to Axiall without identifying such a transfer in the summary plan description as a circumstance that may result in the loss of benefits (the "transfer claim"). Meanwhile, Counts VII and VIII allege that the monthly payment component of the optional "surviving spouse benefit" qualifies as a benefit of a pension plan under ERISA that must be funded and cannot be forfeited. Upon careful review and without further discussion herein, we are satisfied to affirm the district court's award of summary judgment as to the Count I transfer claim and all of Counts VII and VIII.

[5] Under ERISA, summary plan descriptions must "be furnished to participants and beneficiaries" to "apprise [them] of their rights and obligations under [any employee benefit] plan." *See* 29 U.S.C. § 1022(a). Here, the parties agree that the Benefits Plan and the relevant summary plan descriptions are one and the same. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

5

Reduction Act Stock Ownership Plan," and stated that, "[a]lthough [PPG] intends to continue [the ownership plan] during the period provided by law, it nevertheless reserves the right to amend or terminate the plan at any time." *Id.* at 1098.

In 1984, as revealed in the regular discovery proceedings, PPG inserted into the Benefits Plan a new reservation of rights clause that applied to retiree life insurance coverage. PPG then sent a newsletter to the Plan participants announcing the new reservation of rights clause and advising that, "[a]lthough [PPG] has no plans to change the . . . life insurance plans provided retirees, it reserves the right to modify or amend the provisions, terms, conditions and benefits of those policies for retirees who retire on or after September 1, 1984." *See* J.A. 1804. The summary plan descriptions issued by PPG after 1984 were supplied to the plaintiffs in discovery and show that the Plan post-1984 contained a reservation of rights clause that was applicable to retiree life insurance coverage.

## 3.

After discovery concluded in September 2020, the parties each moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.[6] On the merits of the Count I vesting claim, the PPG defendants asserted that the claim fails as a matter of law because the Benefits Plan documents do "not establish a vested benefit" for retiree life insurance coverage. *See Bellon v. PPG Emp. Life & Other Benefits Plan*, No. 5:18-cv-00114, at 14

---

[6] The plaintiffs pursued summary judgment only with respect to Count VII and certain other counts not on appeal. They did not seek summary judgment on Count I, including the vesting claim, or on Count VIII.

(N.D. W. Va. Sept. 29, 2020), ECF No. 172. According to the PPG defendants, the Plan documents demonstrate that — as of 1984 — PPG "unambiguously reserved the right to terminate the Plan." *Id.* That is, "the Plan documents expressly disavowed vesting through reservation of rights language" because, "starting in 1984, [the Plan] contained an unambiguous reservation of rights clause advising that PPG reserved the right to . . . terminate the Plan benefits at any time and for any reason." *Id.* at 16. The PPG defendants insisted that PPG's insertion of the reservation of rights clause into the Plan in 1984 "defeats [the plaintiffs'] claim that their retiree life insurance benefits vested." *Id.*

The plaintiffs resisted the summary judgment request made by the PPG defendants as to the Count I vesting claim, maintaining that "whether [the plaintiffs'] benefits were vested is, at minimum, a disputed question of material fact." *See Bellon v. PPG Emp. Life & Other Benefits Plan*, No. 5:18-cv-00114, at 17 (N.D. W. Va. Oct. 20, 2020), ECF No. 186. The plaintiffs specifically asserted that they "were hired and began work under the same, unqualified promise of retiree life insurance as those who retired before September 1984 (whose benefits PPG treats as vested)." *Id.* Accordingly, the plaintiffs maintained before the district court that the question of vesting "is an issue for trial," rather than for adjudication by the court in the summary judgment proceedings. *Id.*

4.

In December 2020, two months after the parties filed and briefed their summary judgment motions, the PPG defendants notified the plaintiffs' lawyers of newly discovered evidence that was responsive to the plaintiffs' timely discovery requests. The newly discovered evidence consisted of approximately 24 pages of 1984 meeting minutes and

related official documents of the PPG Employee Benefits Committee (the "EBC"), the PPG committee responsible for establishing, maintaining, and amending the Benefits Plan. We refer to those documents as the "undisclosed EBC minutes."[7]

Crucially, the undisclosed EBC minutes reveal that when PPG inserted the reservation of rights clause into the Benefits Plan in 1984 applicable to retiree life insurance coverage, it was not PPG's first adoption of such a clause. According to the undisclosed EBC minutes, the Plan contained — prior to 1969 — a reservation of rights clause that allowed PPG to "modify, amend, or change" the Plan as PPG saw fit. *See* J.A. 2190. The pre-1969 reservation of rights clause discussed in the undisclosed EBC minutes provided that "PPG Industries reserves the right to modify, amend, or change the provisions, terms and conditions, and benefits of the policy." *Id.* PPG removed the earlier reservation of rights clause from the Plan in 1969, however, because, as the undisclosed EBC minutes explain, that reservation of rights clause "caused doubt in the minds of retirees and the sense of security that retirees look for was absent." *Id.* The undisclosed EBC minutes recite that the pre-1969 reservation of rights clause was also removed from the Plan because "[t]he legal ability to enforce such caveats was . . . in doubt." *Id.*

The undisclosed EBC minutes emphasize that the costs of employee benefits were consistently increasing. According to the undisclosed EBC minutes, PPG understood that

---

[7] According to the PPG defendants, the undisclosed EBC minutes were found by PPG sometime in 2019, while the discovery proceedings were yet ongoing in the district court. The PPG defendants blamed their tardy revelation of the undisclosed EBC minutes in December 2020 on a technical mishap that had been caused by an unidentified administrative assistant.

ERISA — which was enacted in 1974 — did not require "vesting for retiree benefits such as life insurance or medical benefits." *See* J.A. 2191. But the undisclosed EBC minutes acknowledge that the "[r]etirees . . . [were] fighting to hold on to these benefits." *Id.* In support of the new reservation of rights clause being added to the Benefits Plan in 1984 to apply to retiree life insurance coverage, the undisclosed EBC minutes proffer that, if PPG were to have "any ability to modify post-retiree welfare benefits" in the future, "all our communications must clearly state our intention to do so." *Id.* The EBC then adopted the new reservation of rights clause, which provided that "retiree benefits other than the pension plan may be modified in the future for those retiring on and after September 1, 1984." *Id.* at 2194.

### 5.

On December 30, 2020, the plaintiffs sought relief from the district court pursuant to Federal Rule of Civil Procedure 56(d) — in light of the undisclosed EBC minutes — requesting the court to reject the PPG defendants' summary judgment motion and authorize time for further discovery.[8] In their supporting memorandum, the plaintiffs maintained that "[t]he new documents . . . provide compelling evidence that the retiree life insurance benefits at issue are vested." *See Bellon v. PPG Emp. Life & Other Benefits Plan*, No. 5:18-cv-00114, at 2 (N.D. W. Va. Dec. 30, 2020), ECF No. 210. As the plaintiffs

---

[8] Federal Rule of Civil Procedure 56(d) provides, in relevant part, that if a nonmoving party "shows by . . . declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a summary judgment motion, the district court may "deny" the motion and "allow time . . . to take discovery."

emphasized, the undisclosed EBC minutes reveal "that, in 1969, [PPG] took the extraordinary step of removing the then-existing reservation of rights clause . . . from the [Benefits Plan] that provided retiree life insurance, to allay employee concern about the security of promised benefits." *Id.* That is, "PPG deliberately relinquished [in 1969] its previously-asserted right to amend the Plan to take away retiree benefits, thereby manifesting its intent to provide retirees with *vested* life insurance." *Id.* The plaintiffs contended that, although PPG adopted the new reservation of rights clause in 1984, that action "had no effect on" the retiree life insurance coverage for the Plan participants — including the retiree-plaintiffs and the deceased spouses of the widow-plaintiffs — who were offered and accepted vested benefits by working for PPG between 1969 and 1984. *Id.* At bottom, the plaintiffs maintained that the undisclosed EBC minutes constitute evidence essential to their Count I vesting claim, and that the PPG defendants' delay in producing that evidence hindered the plaintiffs' discovery efforts and rendered their summary judgment briefing incomplete, thereby entitling them to Rule 56(d) relief. That relief included further discovery in expectation that the PPG defendants would finally "produce all 1969 documents." *Id.* at 3.

The PPG defendants opposed the Rule 56(d) motion, underscoring that the plaintiffs knew that the Benefits Plan "prior to 1984 did not include a reservation of rights clause." *See Bellon v. PPG Emp. Life & Other Benefits Plan*, No. 5:18-cv-00114, at 2 (N.D. W. Va. Jan. 13, 2021), ECF No. 218. The PPG defendants argued to the district court that the plaintiffs were not "prejudiced by the belated production of [the undisclosed EBC minutes] because they principally reflect a fact that [the plaintiffs] have known since at least the

outset of this lawsuit — that the reservation of rights clause was added to the Plan documents in 1984." *Id.* In the PPG defendants' words, the plaintiffs "already had all of the facts necessary to argue that they vested in their future retiree life insurance benefits by working for PPG before 1984." *Id.* Finally, the PPG defendants maintained that, even if the undisclosed EBC minutes reveal "new facts," the Rule 56(d) motion should be denied because the "[p]laintiffs cannot base a vesting claim on actions taken by [PPG] in 1969 — years before ERISA became effective and set the vesting standards that govern [the Count I vesting] claim." *Id.* at 3 (internal quotation marks omitted).

### B.

By its Opinion of June 28, 2021, the district court disposed of the two motions that are pertinent to our analysis of the Count I vesting claim. First, the court denied the plaintiffs' Rule 56(d) motion. And second, the court awarded summary judgment to the PPG defendants — at their request — on the vesting claim.

Addressing the Rule 56(d) motion, the district court determined that the undisclosed EBC minutes pertaining to the Benefits Plan as it existed in 1969 — and in the 15-year period between 1969 and 1984 — are immaterial to the vesting claim. As the court put it, the undisclosed EBC minutes "are not the sort of smoking gun that [the plaintiffs] suggest." *See* Opinion 5. That is so, the court specified, because the plaintiffs knew and acknowledged prior to the production of the undisclosed EBC minutes that there was no reservation of rights clause in the Plan before 1984. With no analysis, the court further pronounced that "[t]o the extent [the plaintiffs] argue that PPG's decision to remove the previously existing 1969 [reservation of rights clause] would have somehow bolstered their

[vesting claim], this argument lacks merit." *Id.* The court summarized that the undisclosed EBC minutes — although "responsive" to proper and timely discovery requests made by the plaintiffs — "are not material to the ultimate issues" at hand. *Id.*

The district court then considered the PPG defendants' request for summary judgment on the Count I vesting claim. In awarding its judgment in favor of the PPG defendants, the court reasoned that PPG's inclusion of a reservation of rights clause in the Benefits Plan — beginning in 1984 — "is 'plainly inconsistent with any alleged intent to vest [the retiree life insurance] benefits.'" *See* Opinion 8 (quoting *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 856 (4th Cir. 1994)) (internal quotation marks omitted). By ruling as it did on the Rule 56(d) and summary judgment motions, the court suggested that even if retiree life insurance coverage constituted a vested benefit between 1969 and 1984, the adoption of the reservation of rights clause in 1984 allowed PPG to thereafter terminate such coverage for Plan participants who worked between 1969 and 1984, but who had not yet retired. In other words, consistent with ERISA, PPG could terminate retiree life insurance coverage for not only future Plan participants, but also present ones.

Ultimately, the district court awarded summary judgment to the PPG defendants on all counts and dismissed the Complaint with prejudice. The plaintiffs timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review a summary judgment award de novo, "based on our independent review of the entire record." *See Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v.*

*Plumbing Servs., Inc.*, 791 F.3d 436, 446 (4th Cir. 2015). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). In conducting summary judgment review, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.

On appeal, the plaintiffs contend that — based on the existing record, including the undisclosed EBC minutes evidencing that retiree life insurance coverage constituted a vested benefit under the Benefits Plan between 1969 and 1984 — the district court erred in awarding summary judgment to the PPG defendants on the Count I vesting claim. The court ruled that the plaintiffs' retiree life insurance coverage could be terminated consistent with ERISA because the Plan included a reservation of rights clause as of 1984. That is, the court apparently believed that the adoption of the reservation of rights clause in 1984 allowed PPG to terminate retiree life insurance coverage for all present and future Plan participants, even if such coverage had previously been vested for participants like the plaintiffs (and their spouses) who worked between 1969 and 1984.

As explained below, we agree with the plaintiffs that if their retiree life insurance coverage were ever a vested benefit, PPG could not rely on the later-added reservation of rights clause to terminate that coverage. Moreover, we recognize that the existing record reflects a genuine dispute of material fact as to the vesting issue. We therefore vacate the

13

judgment with respect to the Count I vesting claim and remand for further proceedings thereon.[9]

## A.

Enacted into law in 1974, ERISA is designed to, inter alia, protect "the interests of participants in employee benefit plans and their beneficiaries." *See* 29 U.S.C. § 1001(b). Under ERISA, there are strict vesting requirements for some employee benefit plans, particularly pension plans. *See, e.g.*, *id.* § 1053. ERISA defines the term "vested" as "nonforfeitable." *Id.* § 1002(25). As the Sixth Circuit has succinctly put it, "[t]o vest benefits is to render them forever unalterable." *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998).

ERISA exempts from its vesting requirements what it calls an "employee welfare benefit plan." *See Sejman v. Warner-Lambert Co., Inc.*, 889 F.2d 1346, 1348 (4th Cir. 1989). Such a plan includes one "maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . .

---

[9] We note that the remand proceedings will afford an opportunity for the further discovery sought by the plaintiffs by way of their unsuccessful motion under Federal Rule of Civil Procedure 56(d), including disclosure of additional documents related to PPG's removal of the reservation of rights clause from the Benefits Plan in 1969. If the PPG defendants continue to fail to produce such evidence, that may be grounds for a trier of fact "to draw adverse inferences from [the] failure to present evidence, the loss of evidence, or the destruction of evidence." *See Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995). Even harsher sanctions for the spoliation of evidence could be warranted. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (explaining that "a district court has broad discretion in choosing an appropriate sanction for spoliation," which "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine" (internal quotation marks omitted)).

benefits in the event of . . . death." *See* 29 U.S.C. § 1002(1).[10]  As we explained in our 1994 *Gable* decision, ERISA does not prohibit an employer from modifying or terminating a welfare plan that is not vested.  *See Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 855 (4th Cir. 1994).  That is, an employer is generally "free to amend the terms of the plan or terminate it entirely."  *See Biggers v. Wittek Indus., Inc.*, 4 F.3d 291, 295 (4th Cir. 1993) (citing *Sejman*, 889 F.3d at 1348-49).

Importantly, however, an employer can elect to "waive its statutory right to modify or terminate benefits . . . by voluntarily undertaking an obligation to provide vested, unalterable benefits."  *See Gable*, 35 F.3d at 855 (alteration and internal quotation marks omitted).  As such, an employer "is generally free under ERISA, for any reason at any time, to adopt, modify, or terminate its welfare plan" — "unless [the] employer contractually cedes its freedom."  *See Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 515 (1997) (alterations and internal quotation marks omitted).

## B.

As previously discussed, the district court's analysis of the vesting claim was premised on the fact that the Benefits Plan contained a reservation of rights clause as of 1984.  That clause, per the court, "is 'plainly inconsistent with any alleged intent to vest [the retiree life insurance] benefits.'"  *See* Opinion 8 (quoting *Gable*, 35 F.3d at 856).  What the court failed to appreciate was that — if, as the plaintiffs assert, the removal of the prior

---

[10] We are satisfied that the district court correctly ruled that, in providing retiree life insurance coverage to PPG employees, the Benefits Plan constitutes an "employee welfare benefit plan" under ERISA.

reservation of rights clause in 1969 vested the retiree life insurance coverage for Plan participants working between 1969 and 1984 — the new reservation of rights clause allowed PPG to modify or terminate the retiree life insurance coverage for only those Plan participants hired after the clause's adoption in 1984. Put differently, if the retiree life insurance coverage constituted a vested benefit between 1969 and 1984, it could not subsequently be taken away from the eligible Plan participants who worked during that 15-year period. *See Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995) (observing that once benefits vest, "any amendment occurring thereafter [cannot] apply retroactively to deny coverage that [has] already vested").

Indeed, the very precedent invoked by the district court — our 1994 *Gable* decision — recognizes that ERISA allows employers to elect "to provide vested, unalterable [welfare plan] benefits." *See* 35 F.3d at 855. And in no way does *Gable* suggest that ERISA somehow empowered employers to terminate benefits that vested prior to ERISA's 1974 enactment. Rather, *Gable* simply rejected the vesting claim of plaintiffs who relied on an apparent promise of retiree health care coverage "during the remainder of [their] lifetime[s] at company expense," where such promise was made with respect to an ERISA-era welfare plan that was subject to a clear reservation of rights clause. *Id.* at 853-54. In rejecting the *Gable* plaintiffs' vesting claim, we emphasized that "[n]othing in the [relevant plan documents] indicated that the plan participants' health insurance benefits would vest upon retirement or at any other time. *Id.* at 856. "To the contrary," the relevant plan documents "specifically reserved the company's right to modify the plan by stating that 'this Policy may be amended or discontinued at any time without the consent of or notice

16

to any plan participant.'" *Id.* (alterations omitted). It was that "express reservation of the company's right to modify or terminate the participants' benefits" that we deemed to be "plainly inconsistent with any alleged intent to vest those benefits." *Id.*

Critically, unlike the plaintiffs in these proceedings, the *Gable* plaintiffs did not assert that vesting occurred prior to the employer's adoption of the pertinent reservation of rights clause. Again, as proof of vesting, the *Gable* plaintiffs relied on plan documents that simultaneously included both an apparent promise of lifetime benefits and an express reservation of the employer's right to modify or terminate those benefits. Consequently, our *Gable* decision does not support the proposition — proffered by the district court herein — that the adoption of the reservation of rights clause in 1984 allowed PPG to thereafter terminate the plaintiffs' retiree life insurance coverage even if that coverage had previously vested. Moreover, if the coverage was in fact vested, *Gable* compels the conclusion that PPG "waiv[ed] its statutory right to modify or terminate [that benefit]." *See* 35 F.3d at 855 (internal quotation marks omitted).

C.

In these circumstances, the issue of whether the plaintiffs' retiree life insurance coverage ever constituted a vested benefit is wholly material to the proper resolution of the Count I vesting claim. It is, of course, the plaintiffs' burden to prove vesting. *See Gable*, 35 F.3d at 855. Generally, "[b]ecause such an obligation constitutes an extra-ERISA commitment, . . . courts may not lightly infer the existence of an agreement to vest employee welfare benefits." *Id.* Moreover, "in recognition of ERISA's requirement that employee benefit plans be governed by written plan documents . . . , any participant's right

17

to a fixed level of lifetime benefits must be found in the [ERISA] plan documents and must be stated in clear and express language." *Id.* (internal quotation marks omitted).

Here, however, the plaintiffs assert that vesting first occurred in 1969, prior to ERISA's enactment in 1974. Thus, it is doubtful that the plaintiffs should be held to any requirement for "clear and express language" in ERISA plan documents. In any event, the plaintiffs do not ask the courts to "lightly infer" vesting. Rather, for proof of vesting, they principally rely on PPG's purposeful removal in 1969 of the then-existing reservation of rights clause according PPG discretion to modify the Benefits Plan and its retiree life insurance coverage. As the plaintiffs describe the removal of the reservation of rights clause, "[t]his type of action is virtually unheard-of, and establishes PPG's intention to waive its rights and offer unalterable (*i.e.*, vested) benefits to its employees who were employed in 1969 or hired thereafter before September 1, 1984, when PPG reinserted [a reservation of rights clause] in the Plan." *See* Br. of Appellants 15.

Ordinary principles of contract law apply to the plaintiffs' vesting claim, whether or not we should utilize post-ERISA precedents in ascertaining if vesting occurred in 1969. *See Wheeler*, 62 F.3d at 638 ("We interpret an ERISA [employee benefit] plan under ordinary principles of contract law, enforcing the plan's plain language in its ordinary sense."). In assessing the vesting claim just as we "would any other contract claim," we look not only "to the terms of the [Benefits Plan]," but also to "other manifestations of the parties' intent." *See Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000) (alteration and internal quotation marks omitted). Certainly, the purposeful deletion of the pre-1969 reservation of rights clause from the Plan may be

seen as a manifestation of PPG's intent to relinquish its right to modify or terminate Plan benefits and voluntarily undertake an obligation to provide vested retiree life insurance coverage. *See Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co.*, 864 F.2d 648, 651 (9th Cir. 1988) ("Words deleted from a contract may be the strongest evidence of the intention of the parties." (internal quotation marks omitted)); *cf. Davidson Cnty. v. Ground Improvement Techniques, Inc.*, No. 95-2176, 1996 WL 195512, at *3 (4th Cir. Apr. 24, 1996) (unpublished) (concluding, based on the parties' deletion of an arbitration clause from a standard construction contract, that their "intent was clear — they expressly chose *not* to arbitrate").

In addition to PPG's deletion of the pre-1969 reservation of rights clause, the plaintiffs have other evidence that arguably manifests PPG's intent to vest the retiree life insurance coverage during the 15-year period between 1969 and 1984. That evidence includes the undisclosed EBC minutes, explaining in 1984 that PPG had removed the reservation of rights clause in 1969 because that provision had "caused doubt in the minds of retirees and the sense of security that retirees look for was absent." *See* J.A. 2190. The plaintiffs' evidence also includes the 1981 summary plan description, which included a reservation of rights clause for other Plan benefits, but not for retiree life insurance coverage. Under the plaintiffs' evidence, PPG treated the retiree life insurance coverage as a vested benefit from 1969 to 1984, well past ERISA's 1974 enactment.[11]

---

[11] Our dissenting colleague's opinion rests upon the faulty premise that — because the 1981 summary plan description is "the only Plan in the record before PPG added the reservation of rights language [in 1984]" — the 1981 summary description "governs" the (Continued)

To counter the plaintiffs' proof of vesting, the PPG defendants underscore that the undisclosed EBC minutes recite that "one of PPG's apparent reasons for removing the Plan's reservation of rights provision in 1969 was that the 'legal ability to enforce such caveats was also in doubt.'" *See* Br. of Appellees 29 n.10. The PPG defendants thereby suggest that the deletion of the reservation of rights clause was not for the purpose of vesting, but for the purpose of removing a provision of dubious legality in the pre-ERISA era. In so doing, however, the PPG defendants simply confirm that — as the plaintiffs insisted to the district court — vesting is a *disputed* issue of material fact.

There being such a factual dispute, the district court erred in awarding summary judgment to the PPG defendants on the Count I vesting claim. Accordingly, although we otherwise affirm, we vacate the court's judgment with respect to the vesting claim and remand for further consideration thereof, which may include related discovery, spoliation issues, and class certification.[12]

---

plaintiffs' vesting claim. *See post* at 23. From there, the dissent concludes that the plaintiffs cannot prove vesting, in that the 1981 summary description does not include "clear and express language" evidencing an intent by PPG to provide vested retiree life insurance coverage. *Id.* at 24 (quoting *Gable*, 35 F.3d at 855). Of course, the plaintiffs do not — as the dissent erroneously insists — rely on the post-ERISA 1981 summary description as the source of vesting; rather, they rely on PPG's pre-ERISA removal in 1969 of the then-existing reservation of rights clause. The 1981 summary description and its omission of a reservation of rights clause is simply evidence that PPG continued to treat the retiree life insurance coverage as a vested benefit once it vested in 1969 and up until 1984. Evidence of PPG's intent to vest in 1969 includes the undisclosed EBC minutes, which the dissent inexplicably ignores.

[12] On remand, the district court may also find it appropriate to address two alternative theories of the plaintiffs' Count I vesting claim that we do not unnecessarily reach today: (1) that the monthly payment component of the Benefits Plan's optional (Continued)

IV.

Pursuant to the foregoing, we affirm in part, vacate in part, and remand for such

other and further proceedings as may be appropriate.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*

---

"surviving spouse benefit," as a promised monthly payment to the surviving spouse for life, constitutes a vested benefit; and (2) that, applying principles of waiver and estoppel, PPG cannot terminate retiree life insurance coverage for eligible Plan participants who worked between 1969 and 1984.

RUSHING, Circuit Judge, concurring in part and dissenting in part:

Like my colleagues in the majority, I would affirm the district court's award of summary judgment to the PPG defendants on Counts 7 and 8 and the Count 1 transfer argument. But I would also affirm the award of summary judgment on the Count 1 vesting claim in its entirety because, interpreting the plan documents according to binding precedent, the retiree life insurance benefit did not vest.

I.

In Count 1, Plaintiffs claim that PPG's Employee Benefits Plan gave them a vested right to retiree life insurance coverage that could not lawfully be altered or terminated. ERISA does not require the retiree life insurance benefit to vest; therefore, PPG had "a statutory right to amend the terms of the plan or terminate it entirely." *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 855 (4th Cir. 1994) (internal quotation marks omitted). But an employer "may waive its statutory right to modify or terminate benefits . . . by voluntarily undertaking an obligation to provide vested, unalterable benefits." *Id.* (internal quotation marks and brackets omitted). Plaintiffs bear the burden to prove that PPG's Benefits Plan "contains a promise to provide vested [retiree life insurance] benefits." *Id.* To avoid summary judgment on Count 1, Plaintiffs must identify evidence from which a reasonable jury could so conclude. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). They have failed to do so.

A.

The operative Benefits Plans when PPG transferred responsibility for Plaintiffs' benefits to Axiall (2013), when Axiall terminated the retiree life insurance benefit (2016),

and when all Plaintiffs retired from PPG (between 1993 and 2012) included a clause "reserv[ing] the right to amend, modify or terminate the[] benefits at any time and for any reason." J.A. 674, 797, 903, 1007, 1478, 1579; *see* J.A. 1630. As we have previously held, "[t]his express reservation of the company's right to modify or terminate the participants' benefits is plainly inconsistent with any alleged intent to vest those benefits." *Gable*, 35 F.3d at 856. The reservation of rights clause, therefore, "is more than sufficient to defeat plaintiffs' claim that the company provided vested [retiree life insurance] benefits." *Id.*

## B.

Recognizing the problem posed by the reservation of rights clause—which PPG added to the Plan in 1984 and maintained consistently since—Plaintiffs argue that an earlier version of the Plan without a reservation of rights governs their claim. According to Plaintiffs and my colleagues in the majority, a jury could find that Plaintiffs' right to retiree life insurance coverage vested before 1984, rendering it unalterable for all employees who worked under a pre-1984 Benefits Plan. Specifically, Plaintiffs rely on the 1981 Benefits Plan, the only Plan in the record before PPG added the reservation of rights language. The Plan documents, however, foreclose Plaintiffs' imaginative claim.[1]

---

[1] As an initial matter, the majority offers no justification for applying a pre-1984 version of the Benefits Plan to these Plaintiffs, who are all former employees who retired after 1992 or the widows of former employees who retired (and died) after 1996. If the pre-1984 Plan provided a vested retiree life insurance benefit, that Plan should be consulted to determine *when* the benefit vested. The majority appears to believe, without analysis or contractual support, that the benefit vested at some point while Plaintiffs or their husbands were still working for PPG before 1984.

A plan participant's right to a fixed level of lifetime benefits beyond those required by ERISA "must be 'found in the plan documents and must be stated in clear and express language.'" *Gable*, 35 F.3d at 855 (quoting *Wise v. El Paso Nat. Gas Co.*, 986 F.2d 929, 937 (5th Cir. 1993)). The absence of a reservation of rights clause in plan documents does not, by itself, create an inference of vesting; rather, the intent to vest must be explicit. *See Wise*, 986 F.2d at 938 (holding that "silence" regarding an employer's right to modify the plan does not "impliedly cede the right to later amend or discontinue coverage"). The majority "doubt[s]" whether this requirement applies here, *supra*, at 18, despite the fact that the majority is assessing a 1981 summary plan description—drafted well after the 1974 enactment of ERISA.

Even accepting the majority's dubious premise, however, ordinary principles of contract law apply to plan documents created before and after ERISA. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112–113 (1989) ("Actions challenging an employer's denial of benefits before the enactment of ERISA were governed by principles of contract law."); *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995) ("We interpret an ERISA [employee benefit] plan under ordinary principles of contract law . . . ."). We therefore must enforce "the plan's plain language in its ordinary sense." *Wheeler*, 62 F.3d at 638. Plaintiffs candidly admit that "nothing in the [1981] booklet states that retiree benefits are 'vested.'" Opening Br. 25–26. More than that, Plaintiffs identify no language in the Plan that they claim could be interpreted as promising to provide

vested, unalterable retiree life insurance coverage.[2]  *See*, *e.g.*, Oral Arg. at 4:32–7:21.  In the absence of any contractual provision even arguably creating a vested right, none exists.  Plainly put, we cannot "presume lifetime vesting from silence" because that is "not a valid way to read a contract."  *CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 766 (2018); *see M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 442 (2015) ("[W]hen a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life.").

The majority ignores the language of the Plan it claims to be interpreting.  Indeed, it expressly eschews the need to look at any contract at all, *supra*, at 20 n.11, skipping straight to extrinsic evidence about PPG's intentions when removing a reservation of rights clause from a prior version of the Benefits Plan in 1969.  But courts generally may not consult extrinsic evidence to determine the parties' intentions unless the contract is ambiguous.  *See* 11 R. Lord, Williston on Contracts §§ 30:4, 30:6 (4th ed. 2012 & Supp.

---

[2] Plaintiffs advance an additional vesting theory regarding the optional surviving spouse benefit, which the majority does not address.  *See supra*, at 21 n.12.  Instead of receiving life insurance in one lump sum, a plan participant could elect the surviving spouse benefit, which provided half of the lump sum payment plus a monthly payment to the surviving spouse for life.  Plaintiffs contend that, even if the retiree life insurance as a whole did not vest, at a minimum the monthly payment component of the surviving spouse option vested because the Plan described it as "guaranteed lifetime income to an eligible spouse."  J.A. 1057.  Under general principles of insurance contract law, the right to life insurance benefits vests "at the time of the plan participant's death."  *Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634, 641 (4th Cir. 2007), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).  The "guaranteed lifetime income" language is consistent with this principle.  Plaintiffs do not identify anything in the Plan to suggest that these monthly life insurance payments became "guaranteed" to a "surviving" spouse *before* the retiree died.

2022); *see also CHN Indus.*, 138 S. Ct. at 765.  The majority errs by relying on extrinsic evidence to create a supposed genuine issue of material fact without first finding the 1981 Benefits Plan ambiguous.

In fact, the 1981 Benefits Plan is not ambiguous on the question of vesting the retiree life insurance benefit.  "[A] contract is not ambiguous unless, after applying established rules of interpretation, it remains reasonably susceptible to at least two reasonable but conflicting meanings."  *CNH Indus.*, 138 S. Ct. at 765 (internal quotation marks and brackets omitted).  Here, that means the 1981 Benefits Plan was "not ambiguous unless it could reasonably be read as vesting [retiree life insurance] benefits for life."  *Id.*  Plaintiffs identify nothing in the Plan that they suggest could support such an interpretation; they assert only that the Plan's silence creates ambiguity.  But, as explained above, the Supreme Court has expressly rejected inferring ambiguity from silence on vesting as contrary to ordinary principles of contract law.  *CNH Indus.*, 138 S. Ct. at 766; *see also Tackett*, 574 U.S. at 442.  Because the 1981 Benefits Plan cannot reasonably be read as vesting the retiree life insurance benefit, the Plan is not ambiguous and Plaintiffs' extrinsic evidence cannot influence the interpretation of the contract.

The majority's unorthodox approach is not supported by the three cases it cites.  *See supra*, at 18–19.  The first case quotes a Supreme Court decision noting that courts before ERISA reviewed employee benefit claims like "any other contract claim—by looking to the terms of the plan and other manifestations of the parties' intent."  *Firestone Tire*, 489 U.S. at 112–113.  As that case's context and more recent precedent both demonstrate, the Supreme Court did not upend traditional contract law regarding the limited use of extrinsic

evidence with this mention of "other manifestations of the parties' intent."  Equally telling, the quoted propositions from the majority's other two cases both concern interpreting the actual words of a contract, not resort to extrinsic evidence.  In *Fireguard Sprinkler System, Inc. v. Scottsdale Insurance Co.*, the court compared two clauses of a liability insurance policy and accorded relevance to the fact that a phrase in one paragraph was omitted in the paragraph immediately following.  864 F.2d 648, 651 (9th Cir. 1988).  And *Davidson County v. Ground Improvement Techniques, Inc.*, required the court to interpret a "Supplementary Conditions" document appended to a standard contract, which stated: "Exhibit GC-A [the arbitration clause] has been deleted."  No. 95-2176, 1996 WL 195512, at *3 (4th Cir. Apr. 24, 1996) (italics omitted).  These cases do not support looking outside the contract to one party's historical drafting choices and private meeting minutes to glean extratextual insights.

In any event, no authority cited by the majority supports construing silence on the topic of vesting as anything other than a denial of lifetime vesting.  The fact that PPG reserved its right to modify the Benefits Plan in explicit language before 1969 does not allow a court to read the silence in later Plan documents as a promise to provide a fixed level of retiree life insurance coverage that cannot be altered or terminated even after expiration of the parties' contract.  "[T]he rule that contractual provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA welfare benefits plan."  *Tackett*, 574 U.S. at 435 (internal quotation marks and brackets omitted).  Because no Plan document in this case has terms that vest the retiree life insurance benefit or create

ambiguity on that score, Plaintiffs have failed to identify evidence from which a jury could find in their favor on Count 1, and summary judgment was appropriate.[3]

## II.

This appeal also resolves Plaintiffs' claims in Counts 7 and 8, which are premised on the faulty assumption that the surviving spouse benefit was a "pension plan" as defined by ERISA. As previously noted, the surviving spouse benefit was an option within the retiree life insurance benefit. Instead of one lump sum life insurance payment, a Plan participant could elect the surviving spouse benefit, which provided half of the lump sum payment plus a monthly payment to the surviving spouse for life. The district court held that the surviving spouse benefit was not a "pension plan" because it did not "provide[] retirement income to employees" or "result[] in a deferral of income by employees." 29 U.S.C. § 1002(2)(A). Instead, it was a "welfare plan" that provided "benefits in the event of . . . death." *Id.* § 1002(1).

The majority affirms the district court's decision, and I agree. *See supra*, at 5 n.4, 15 n.10. Because the surviving spouse benefit did not qualify as an ERISA "pension plan," the district court correctly granted summary judgment to the PPG defendants on Counts 7 and 8 of Plaintiffs' amended complaint.

---

[3] The majority appears to assume that on remand the district court will reopen discovery even though this Court does not reverse the district court's Rule 56(d) ruling because it was not appealed. *Supra*, at 14 n.9. In the process, the majority makes unwarranted references to spoliation and adverse inferences, accusations that not even Plaintiffs have lodged against the PPG defendants and which lack any basis in the record on appeal. *See supra*, at 14 n.9, 21.

III.

In sum, I would affirm the district court in full.  I join the majority in affirming summary judgment in favor of the PPG defendants on Counts 7 and 8.  But the majority reaches the wrong conclusion on Count 1 by dispensing with ordinary principles of contract interpretation to find that Plaintiffs could prevail on their claim that the retiree life insurance benefit vested.  Because the plan documents unambiguously do not vest that benefit, I must respectfully dissent from that holding.