No. 21-1812

---

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

CHARLES W. BELLON; ROBERT E. EAKIN; JUDY GAY BURKE; LOUISE
NICHOLS; WILTON G. WALLACE; BERNADOT F. VEILLON; BARBARA
BROWN; ROBERT E. WILLIAMS, on behalf of themselves and others similarly
situated,

*Plaintiffs-Appellants,*

v.

THE PPG EMPLOYEE LIFE AND OTHER BENEFITS PLAN; PPG
INDUSTRIES, INC.; THE PPG PLAN ADMINISTRATOR,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Northern District of West Virginia at Wheeling,
No. 5:18-cv-00114,
Hon. Gina M. Groh, Chief United States District Judge, Presiding

---

### DEFENDANTS-APPELLEES' PETITION FOR REHEARING OR
### REHEARING *EN BANC*

---

Joseph J. Torres
Clifford W. Berlow
Alexis E. Bates
Hope H. Tone-O'Keefe
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
*Attorneys for Defendants-Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>21-1812</u>          Caption: <u>Bellon et al. v. The PPG Employee Life and Other Benefits Plan, et al</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>The PPG Employee Life And Other Benefits Plan</u>
(name of party/amicus)

_____

 who is _____<u>Appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.     Does party/amicus have any parent corporations?                 ☑YES ☐NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?                                    ☐YES ☑NO
       If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☑YES ☐NO
     If yes, identify entity and nature of interest:

      PPG Industries, Inc.

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: Joseph J. Torres                              Date:   July 29, 2022

Counsel for: PPG Industries, Inc., et al.

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. 21-1812        Caption: Bellon et al. v. The PPG Employee Life and Other Benefits Plan, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

PPG Industries, Inc.
(name of party/amicus)


who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO


2.  Does party/amicus have any parent corporations?                          ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:




3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐YES ☑NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: Joseph J. Torres                    Date:    July 29, 2022

Counsel for: PPG Industries, Inc., et al.

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>21-1812</u>      Caption: <u>Bellon et al. v. The PPG Employee Life and Other Benefits Plan, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>The PPG Plan Administrator of the PPG Employee Life and Other Benefits Plan</u>
(name of party/amicus)

who is <u>Appellee</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.   Does party/amicus have any parent corporations? ☐YES ☑NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
     If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: Joseph J. Torres                     Date:   July 29, 2022

Counsel for: PPG Industries, Inc., et al.

Print to PDF for Filing

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

FEDERAL RULE 35(b) AND LOCAL RULE 40(b) STATEMENT OF
    PURPOSE ....................................................................................1

BACKGROUND AND PANEL DECISION ............................................ 2

REASONS FOR GRANTING REHEARING ..........................................5

I.  The Panel Should Grant Rehearing Because the Decision Fails to Address A
    Critical and Dispositive Legal Point About the Timing of Vesting. ...................5

II.  The Full Court Should Review The Panel Opinion Because It Conflicts
    With Prior Decisions Of This Court And Of Other Circuits. .............................9

CONCLUSION ...................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alday v. Container Corp. of Am.*,
   906 F.2d 660 (11th Cir. 1990) ................................................................8

*Anderson v. John Morrell & Co.*,
   830 F.2d 872 (8th Cir. 1987) .............................................................14

*CNH Indus. N.V. v. Reese*,
   138 S. Ct. 761 (2018)........................................................................6

*Curtiss-Wright Corp. v. Schoonejongen*,
   514 U.S. 73 (1995)..........................................................................10

*Devlin v. Empire Blue Cross & Blue Shield*,
   274 F.3d 76 (2d Cir. 2001) .................................................................11

*Fulghum v. Embarq Corp.*,
   785 F.3d 395 (10th Cir. 2015) ..............................................................8

*Gable v. Sweetheart Cup Co.*,
   35 F.3d 851 (4th Cir. 1994) ......................................................10, 14, 15

*Grosz-Salomon v. Paul Revere Life Ins. Co.*,
   237 F.3d 1154 (9th Cir. 2001) .............................................................11

*Hooven v. Exxon Mobile Corp.*,
   465 F.3d 566 (3d Cir. 2006) ...........................................................11, 12

*M & G Polymers USA, LLC v. Tackett*,
   574 U.S. 427 (2015)...........................................................6, 7, 8, 10, 11

*Martin v. Bankers Tr. Co.*,
   565 F.2d 1276 (4th Cir. 1977) .............................................................3

*Moore v. Metro. Life Ins. Co.*,
   856 F.2d 488 (2d Cir. 1988) ...........................................................11, 14

*Pierce v. Security Trust Life Insurance Co.*,
   979 F.2d 23 (4th Cir. 1992) ..........................................................1, 6, 7

*Winnett v. Caterpillar, Inc.*,
    553 F.3d 1000 (6th Cir. 2009) ........................................................12, 13

*Wise v. El Paso Natural Gas Co.*,
    986 F.2d 929 (5th Cir. 1993) ....................................................10, 13, 14

**Statutes**

29 U.S.C. § 1144(a) ..........................................................................................3

**Other Authorities**

H.R. Rep. No. 93-807 (1974), *as reprinted in* 1974 U.S.C.C.A.N.
    4670.................................................................................................................14

U.S. Dep't of Labor, Annual Report to Congress on Self-Insured
    Group Health Plans 5 (Mar. 2022) ....................................................14

## FEDERAL RULE 35(B) AND LOCAL RULE 40(B)
## STATEMENT OF PURPOSE

Defendants-Appellees PPG Industries, Inc., the PPG Employee Life and Other Benefits Plan, and the PPG Plan Administrator (collectively, "PPG") respectfully petition for panel rehearing or, alternatively, rehearing *en banc* of the Court's July 15, 2022 Opinion in which a divided panel affirmed in part and vacated and remanded in part the District Court's prior grant of summary judgment for PPG.

Panel rehearing is warranted because the Panel Majority either overlooked a dispositive and fully briefed legal issue regarding the vesting of retiree welfare benefits or it implicitly adopted a novel theory of vesting that is contrary to the controlling precedent of this Court and other Circuits. Specifically, assuming *arguendo* there was an offer of vested retiree life insurance benefits under the plan in place between 1969 and 1984, the Panel Majority did not resolve *who* is entitled to those benefits. The answer—under controlling precedent from this Court, *Pierce v. Security Trust Life Insurance Co.*, 979 F.2d 23 (4th Cir. 1992) (per curiam), and as noted by the Dissenting Judge—is none of the putative class representatives. That is because none of them retired between 1969 and 1984, meaning the benefits could not have vested for them under *Pierce*. The Panel Majority's failure to explicitly address that issue places the District Court in an impossible position on remand. Either the District Court must disregard *Pierce* and similar decisions from other Circuits, or it must arguably decline to fully implement this Court's mandate.

One the other hand, if the Panel Majority *did* consider this issue and implicitly held that working for a single day when such a benefit was offered creates a lifetime entitlement to that benefit for employees upon their future retirement or to their potential surviving spouse thereafter, this case warrants rehearing *en banc* for two reasons. *First*, it marks a stark departure from the precedent of this Court. *Second*, it implicates a split of authority among the Circuits. As it stands, and particularly because the Dissenting Judge took note of the oversight, future litigants likely will cite the Court's Opinion as holding that the Fourth Circuit now recognizes a so-called "vesting by working" approach to employee benefits plans contrary to its prior decisions and the decisions of several other Circuits.

The Panel Majority's adoption of a "vesting by working" rule thus merits careful consideration by the full Court. Given the number of employers and employees potentially subject to this rule, there is no question it is of exceptional importance. And, because such a rule is inconsistent with recent instructions from the Supreme Court regarding the use of ordinary principles of contract interpretation in resolving such cases, the full Court should grant this petition and, following briefing and argument, affirm the judgment of the District Court.

## BACKGROUND AND PANEL DECISION

In 2012, PPG announced the separation of its commodity chemicals business that, when merged with another corporation, resulted in an independent public

company, Axiall Corporation ("Axiall"). As part of the transaction, Axiall assumed liabilities for the benefits offered to retirees of PPG's commodity chemicals business, including certain retiree life insurance benefits. Years later, without involvement from PPG, Axiall terminated retiree life insurance benefits, effective January 1, 2016.

Plaintiffs—former PPG commodity chemicals salaried retirees, or their surviving spouses—brought eight claims against PPG, alleging that the termination violated ERISA. Following discovery, the District Court granted PPG's motion for summary judgment as to all eight counts. Plaintiffs appealed three of those eight counts and a divided panel of this Court revived Plaintiffs' Count I claim that the retiree life insurance benefits had "vested" and PPG thus was prohibited from altering them.

Regarding vesting, the Panel Majority cited the following as the key events:

- **1969, Removal of Reservation of Rights Clause.** There is evidence, though it is disputed, that in 1969 PPG removed a "reservation of rights" clause from the PPG Employee Life and Other Benefits Plan (the "Plan"). *See* Slip Op. at 8.

- **1975, Effective Date of ERISA**. ERISA was enacted on September 2, 1974, and became effective on January 1, 1975. *See Martin v. Bankers Tr. Co.*, 565 F.2d 1276, 1277–78, 1277 n.1 (4th Cir. 1977); 29 U.S.C. § 1144(a).

- **1984, Inclusion, or Reinsertion, of Reservation of Rights Clause**. In 1984, PPG sent a newsletter to Plan participants advising that "[a]lthough [PPG] has no plans to change the … life insurance plans provided retirees, it reserves the right to

3

modify or amend the provisions, terms, conditions and benefits of those policies for retirees who retire on or after September 1, 1984." *See* Joint Appendix (Corrected) ("JA") 1804; Slip Op. at 6.  The Plan itself reflected similar language, and some version of the reservation of rights clause remained through the Axiall transaction. *See* Slip Op. at 6–7.

Based on these events, the Panel Majority found an issue of fact as to whether the retiree life insurance benefits vested when the Plan was without its explicit reservations of rights clause (*i.e.*, between 1969 and 1984).  This, according to the Panel Majority, warranted remand because "[w]hat the [district] court failed to appreciate was that—if, as the plaintiffs assert, the removal of the prior reservation of rights clause in 1969 vested the retiree life insurance coverage for Plan participants working between 1969 and 1984—the new reservation of rights clause allowed PPG to modify or terminate the retiree life insurance coverage for only those Plan participants hired after the clause's adoption in 1984."  Slip Op. at 15–16.

Judge Rushing dissented from this portion of the Opinion because *inter alia* "[t]he operative Benefits Plans . . . when all Plaintiffs retired from PPG (between 1993 and 2012) included a clause 'reserv[ing] the right to amend, modify or terminate the[] benefits at any time and for any reason.'"  Slip Op. at 22–23 (Rushing, J., dissenting) (citation omitted).  Regarding the Panel Majority's focus on the lack of an express reservation of rights clause in Plan documents from 1969 to 1984, Judge Rushing noted:

[T]he majority offers no justification for applying a pre-1984 version of the Benefits Plan to these Plaintiffs, who are all former employees who retired after 1992 or the widows of former employees who retired (and died) after 1996. If the pre-1984 Plan provided a vested retiree life insurance benefit, that Plan should be consulted to determine *when* the benefit vested. The majority appears to believe, without analysis or contractual support, that the benefit vested at some point while Plaintiffs or their husbands were still working for PPG before 1984.

Slip Op. at 23 n.1 (Rushing, J., dissenting).

## REASONS FOR GRANTING REHEARING

I.    **The Panel Should Grant Rehearing Because the Decision Fails to Address A Critical and Dispositive Legal Point About the Timing of Vesting.**

The Panel Majority held there was a question of fact as to whether benefits vested from the time the reservation of rights clause was purportedly removed in 1969 to its supposed reinstatement in 1984. *See* Slip Op. at 19–20. Even if that is true, and PPG believes it is not, the Panel Majority did not specifically address the critical question raised by this inquiry—for whom did those benefits vest?

There are three potential answers to that question. *First*, the benefits could have vested for employees who met all the conditions to be eligible for the benefit while that benefit was offered (*i.e.*, those who retired between 1969 and 1984). *Second*, the benefits could have vested for employees who worked so much as a day while that benefit was offered (*i.e.*, all employees who worked at all between 1969 and 1984). *Third*, the benefits could have vested for employees who worked (or began working) for PPG before ERISA became effective on January 1, 1975.

5

The 1981 summary plan description ("SPD") clearly answers this question. It contains separate descriptions of life insurance for "active employees" and "retired employees." *See* JA1747–48 (active); JA1749 (retired). Regarding retiree life insurance, the 1981 SPD states "**You Are Eligible** On the date of your retirement." JA1746. That means what it says. *See M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015) ("Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.") (citation omitted); *see also CNH Indus. N.V. v. Reese,* 138 S. Ct. 761, 766 (2018). A participant only is "eligible" for retiree life insurance benefits, even if those benefits are thereafter "vested" and thus cannot be altered, "[o]n the date of [their] retirement." JA1746.[1]

That follows from this Court's decision in *Pierce*. There, an employer in 1978 amended the applicable benefit plan to provide retirees with free medical benefits and its 1980 SPD did not include a reservation of rights. *Pierce*, 979 F.2d at 24. Then, in 1984 the employer issued a new SPD stating that the plan could be changed or terminated unilaterally, which the employer did in 1988 by adding a cost-sharing

---

[1]As the Dissenting Judge stated, the majority offered "no justification for applying a pre-1984 version of the Benefits Plan to these Plaintiffs[.]" Slip Op. at 23 n.1 (Rushing, J., dissenting). And, as the Dissenting Judge further noted, Plaintiffs did not appeal the denial of their Rule 56(d) motion. *Id*. at 28 n.3 (Rushing, J., dissenting). Thus, what may have occurred prior to 1981 is of no moment as it relates to these Plaintiffs.

component to the retiree medical benefit. *Id.* at 25. The district court held this was impermissible because the benefits were vested, *id.* at 29, but this Court reversed, holding that requiring retiree participants to pay a portion of insurance premiums accruing after January 1, 1989, did not violate the Plan, *id.* at 30.

The Court in *Pierce* thus rejected a "vesting through working" framework. *See* PPG Br. at 25–30. If working alone were sufficient to vest a benefit, that would mean the benefit could not be altered for any participant who worked so much as a day while that offer was in place. But the Court ruled to the contrary. That was the correct result then, and it is the correct result now. That the PPG Plan might not have included a reservation of rights clause for a period of time prior to 1984 does not impair PPG's right, after 1984, to modify Plaintiffs' retiree life insurance benefits for participants who were not eligible for those benefits at that time. *Pierce,* 979 F.2d at 30; *see* PPG Brief at 25 (citing *Pierce* and explaining "[t]his Court already has rejected the premise of Plaintiffs' 'vesting through working' theory"). Were the rule otherwise, benefit eligibility requirements laid out in plan documents and other materials would have no meaning. *See also Tackett*, 574 U.S. at 439–40 (rejecting premise that retiree medical benefits are a "form of deferred compensation," because such a "characterization is contrary to Congress' determination otherwise").

This issue is dispositive. It is undisputed that none of the Plaintiffs in this case retired or became a surviving spouse before 1984, so they cannot be eligible for any retiree life insurance benefit that allegedly vested prior thereto. *See* Slip Op. at 23 n.1 (Rushing, J., dissenting) (noting that none of the Plaintiffs became eligible for benefits between 1969 and 1984). Thus, even if retiree life insurance benefits *could* have vested for some participants between 1969 and 1984, none of the Plaintiffs were among those participants. Either way, Plaintiffs could not prevail, and summary judgment therefore should have been affirmed as to them.

The Panel Majority made a related suggestion that warrants further review: that ERISA may not apply to this case. The Panel Majority noted that the purported removal of the reservation of rights clause "first occurred in 1969, prior to ERISA's enactment in 1974," and further stated—without support—that it is "doubtful that the plaintiffs should be held" to ERISA's standard. Slip Op. at 18. Other Circuits have rejected the notion that the analysis regarding vesting varies as to pre- and post-ERISA plans. *E.g.*, *Alday v. Container Corp. of Am.*, 906 F.2d 660, 664 n.10 (11th Cir. 1990). That view is at least in tension with the settled principle that in "deciding whether an ERISA employee welfare benefit plan provides for vested benefits, [courts] apply *general principles of contract construction.*" *Fulghum v. Embarq Corp.*, 785 F.3d 395, 403 (10th Cir. 2015) (citation omitted) (emphasis added); *see Tackett*, 574 U.S. at 435 (interpreting vesting of welfare benefits "according to

ordinary principles of contract law"). But even if the Panel Majority does mean that pre-ERISA plans should be analyzed using something other than "general principles of contract construction," the Court never explains how that would work. Nor does it explain the proper analysis regarding participants in a pre-ERISA plan who began working or worked *after* ERISA became effective on January 1, 1975. That is critical here given that at least one Plaintiff began working in 1977 and all Plaintiffs (or their spouses) worked after 1975. JA30–32, ¶¶ 4–11.

Panel rehearing thus is warranted. At present, the District Court must decide whether to apply the rule of *Pierce* or instead follow an erroneous "vesting by working" approach. And it must decide if this analysis differs as to the pre- and post-1975 employees. If the Panel Majority intends to adopt sweeping new rules of employee benefits law, it should say so expressly, explain its rationale, and acknowledge the extensive body of contrary authority.

## II. The Full Court Should Review The Panel Opinion Because It Conflicts With Prior Decisions Of This Court And Of Other Circuits.

The Panel Majority suggested that retiree life insurance benefits could have vested "for Plan participants *working* between 1969 and 1984," and that if this occurred, PPG could modify or terminate retiree life insurance coverage only for "participants *hired* after the clause's adoption in 1984." Slip Op. at 15–16 (emphasis added). To the extent the Panel Majority does not alter the Panel Opinion or, in the course of doing so, affirms an intention to recognize a "vesting by working"

9

approach to employee benefit plans—whether for all plans or for pre-ERISA plans only—the Panel Majority's holding implicates both an inter- and intra-circuit split that should be examined by the Court *en banc*.

By way of background, retiree life insurance benefits are "welfare benefits" that ERISA exempts from its strict vesting requirements for pension benefits. *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 855 (4th Cir. 1994); *see Tackett*, 574 U.S. at 434–35. For welfare benefits to vest, Plaintiffs must point to "clear and express language" promising to provide vested welfare benefits. *Gable*, 35 F.3d at 855 (quoting *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 937 (5th Cir. 1993) and citing *Alday*, 906 F.2d at 665). Under this demanding standard, mere silence does not "impliedly cede the right to later amend or discontinue coverage." *Wise*, 986 F.2d at 938; *see Tackett*, 574 U.S. at 438–39. Rather, as a default, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans[.]" *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).

*First*, as discussed above, a "vesting by working" approach to a plan that does not expressly provide for such an occurrence (*see* JA1746, JA1749) conflicts with the Court's decision in *Pierce*. That conflict alone—and the concomitant risk that lower courts in this Circuit will be unsure as to what rule they should apply—warrants the Court's *en banc* consideration. *See also Gable*, 35 F.3d at 855–56

(looking to plan document in existence "at the time of [plaintiffs'] retirement" to resolve claim for alleged vested benefits).

*Second*, other Circuits have rejected the notion that welfare benefits become "fixed" upon an employee's "'acceptance' through continued employment," which "undercuts the very concept of 'vesting' that is crucial to a claim under ERISA." *Hooven v. Exxon Mobile Corp.*, 465 F.3d 566, 575 (3d Cir. 2006). Rather, other Circuits consistently have held that welfare benefits vest *only* "[w]here the plan provides that an employee is irrevocably entitled to a certain benefit, and where all of the conditions precedent to the employee's receipt of that benefit have been satisfied." *Id.* (citing ABA Section of Labor & Employment Law, *Employee Benefits Law* 1052 (2d ed. 2000)); *see Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 491–92 (2d Cir. 1988) (rejecting claim that welfare benefits vested through employees' acceptance "by remaining with the Company"); *Tackett*, 574 U.S. at 439–40 (rejecting premise that retiree medical benefits "are a form of deferred compensation"). "Simply put, an employee's rights under an ERISA welfare benefit plan do not vest unless and until the employer says they do." *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1160 (9th Cir. 2001).[2]

---

[2] To the extent the Second Circuit in *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 84, 86–87 (2d Cir. 2001), adopted an "acceptance by working" theory, that rationale cannot be squared with the Supreme Court's subsequent decision in

11

Applying these principles, the Third Circuit in *Hooven* held that the severance benefits at issue did not vest until an employee satisfied all three preconditions for entitlement to those benefits under the terms of the plan, not simply when the employees "accepted [the employer's] 'offer' by staying in their jobs."  465 F.3d at 575.  Specifically, the plan and SPD provided that a Tier 4 employee like the plaintiffs was "not entitled to severance benefits" until he met three requirements and "[i]t is only after *all* of these requirements are met, *i.e.*, his employment is terminated, he has satisfied his obligation to continue working for the company and he signs a separation agreement," that his "right to the benefits would have accrued and become fixed and enforceable."  *Id.*  Because the plaintiffs were terminated between March and May 2000, their "rights to severance would have accrued, at the earliest, in March of 2000."  *Id*.  Thus, the "[p]laintiffs' rights to severance were not fixed as a result of [p]laintiffs' 'performance,' but, rather, at such time as all the conditions to their entitlement, as specified in the [plan] documents, had occurred." *Id*.

The Sixth Circuit in *Winnett v. Caterpillar, Inc.* reached a parallel conclusion when it held that plan language stating retiree medical insurance "shall be provided … after [an employee's] retirement from active service," and that coverage "shall

---

*Tackett* or this Court's controlling precedent in *Pierce*, to say nothing of the other Circuit decisions discussed above.

take effect on [the employee's] retirement date," could not "be reasonably interpreted" to convey that benefits vested any sooner.  553 F.3d 1000, 1009 (6th Cir. 2009).  Rather, "[t]he phrase 'shall be provided' in the Group Insurance Plan refer[ed] to 'retired employees,'—not to current employees who might retire in the future."  *Id*.  The plaintiffs' claims there failed because the plan in place at the time of their retirement contained a reservation of rights clause, and "[a]lthough reservation-of-rights language may be ineffective as to workers who have already retired under the plan, as to future retirees, it alert[ed] them that the company may discontinue the retirement benefits of employees *who have yet to retire* when the agreement ends."  *Id*. at 1010 (internal quotation marks and citation omitted).  Similarly, the Fifth Circuit in *Wise v. El Paso Natural Gas Co.* held that plan documents providing that employees would receive retirement health insurance "upon retirement" made "no commitment[]" "[a]s to yet-unretired workers."  986 F.2d 929, 937–38 (5th Cir. 1993) (alteration adopted).

These and other decisions support the Dissenting Judge's observation that, even assuming "the pre-1984 Plan provided a vested retiree life insurance benefit, that Plan should be consulted to determine *when* the benefit vested."  Slip Op. at 23 n.1 (Rushing, J., dissenting).  As applied here, the 1981 Plan did not contain a reservation of rights clause but did make employees "eligible" for benefits only on retirement.  JA1746.  Under controlling precedent, it cannot be true that a group of

13

Plaintiffs, all of whom retired or became surviving spouses after 1992, accepted an offer of vested benefits—available to them, at the earliest, upon retirement—before 1984.

This question—whether working for any period of time while an offer of a future retiree benefit is in place causes that benefit to vest—is one of "exceptional importance." Over 130 million people nationwide are covered by an ERISA plan, many of which offer welfare benefits. U.S. Dep't of Labor, Annual Report to Congress on Self-Insured Group Health Plans 5 (Mar. 2022). "[I]n rejecting the automatic vesting" of such benefits, "Congress evidenced its recognition of the need for flexibility" given that "the costs of such plans are subject to fluctuating and unpredictable variables." *Moore*, 856 F.2d at 492. While an employer may undertake an "extra-ERISA commitment" to vest welfare benefits, *Gable*, 35 F.3d at 855, the decisions of this and other Circuits reflect that this "is a narrow doctrine," *Wise*, 986 F.2d at 938, and does not contemplate vesting "upon the performance of service by employees," *Anderson v. John Morrell & Co.*, 830 F.2d 872, 877 (8th Cir. 1987). Congress believed that the "vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income." H.R. Rep. No. 93-807, at 60 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 4670, 4726. A welfare benefit thus does not vest

absent "clear and express" plan language that it does. *Gable*, 35 F.3d at 855 (citation omitted).

Because the Panel Opinion casts doubt on these previously settled principles, consideration by the *en banc* court is warranted.

## CONCLUSION

PPG respectfully requests that this Court order rehearing or, alternatively, rehearing *en banc*.

Dated: July 29, 2022                    Respectfully submitted,

                                        /s/ Joseph J. Torres
                                        Joseph J. Torres
                                        Clifford W. Berlow
                                        Alexis E. Bates
                                        Hope H. Tone-O'Keefe
                                        JENNER & BLOCK LLP
                                        353 N. Clark Street
                                        Chicago, IL 60654
                                        Telephone: (312) 222-9350

                                        *Attorneys for Defendants-Appellees*

# CERTIFICATE OF COMPLIANCE

1.      This petition complies with the type-volume limitation of Rule 35(b)(2)

and 40(b) of the Federal Rules of Appellate Procedure because, according to the

"word count" function of Microsoft Office 365 (O365), this petition contains 3,621

words, excluding the parts of the petition exempted from the word count by Rule

32(f) of the Federal Rules of Appellate Procedure.

2.      This petition complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this

petition has been prepared in a proportionally spaced typeface using Microsoft

Office 365 (0365) in 14 point Times New Roman Style font for the main text and

for footnotes.


Dated: July 29, 2022                          /s/ Joseph J. Torres
                                              Joseph J. Torres

## CERTIFICATE OF SERVICE

I, Joseph J. Torres, an attorney, hereby certify that on July 29, 2022, I caused the **Defendants-Appellees' Petition for Rehearing or Rehearing *En Banc*** to be electronically filed with the Clerk of the Court, United States Court of Appeals for the Fourth Circuit  using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated: July 29, 2022                    /s/ Joseph J. Torres
                                        Joseph J. Torres